UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                                                          )<br>v.                                                      )<br>                                                          )   CRIMINAL NO. 2:13-CR-79-DBH-01<br>MARKEVIN FAUCETTE,               )<br>                                                          )<br>            DEFENDANT                )  | |

DECISION AND ORDER ON DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

The defendant Markevin Faucette has filed a motion for compassionate release from USP Lewisburg.[1] Def.'s Mot. (ECF No. 262); Def.'s Resp. to Gov't (ECF No. 268). He asks for immediate release and an extension of his period of supervised release to reflect his reduced prison time along with a condition of home confinement for part or all of that period.[2]

I sentenced Faucette in 2014 for a crack cocaine trafficking conspiracy as a career criminal with a prior felony drug conviction. He faced a mandatory minimum sentence of at least 10 years. I imposed 200 months in prison, a sentence below the Guideline range.[3]

---

[1] Faucette asked the Warden for relief in June 2020 (ECF Nos. 262 at 3 & 262-1), so his request was made well more than 30 days before this motion, as the statute requires. See 18 U.S.C. § 3582(c)(1)(A).

[2] He says that he is not asking me to order the Bureau of Prisons to release him on home confinement under the CARES Act. See Def.'s Reply at 10-11 (ECF No. 272). In any event, I have no authority to do so. A defendant's ability to seek compassionate release from the court derives only from the First Step Act. See United States v. Murphy, No. 2:13-cr-00115-NT, 2020 WL 4606416, at *3 n.1 (D. Me. Aug. 11, 2020).

[3] Initially, I erroneously sentenced him to concurrent terms on two counts when, in fact he had pleaded guilty to only one count. No one noticed the error (the presentence report and the defendant's briefing both said he had pleaded guilty to two counts) until the appeal. On the appeal the government conceded the error and the First Circuit vacated and remanded. United

Faucette is a 47-year-old African American with hypertension and high cholesterol.[4]  The parties agreed in their filings that USP Lewisburg had 33 inmates and 7 staff who were positive for COVID-19 and 51 inmates and 1 staff who had recovered.  Gov't's Reply at 11 (ECF No. 270); Def.'s Reply at 3 (ECF No. 272).  Current BOP data reflects that USP Lewisburg now has 0 inmates and 10 staff positive for COVID-19 and 84 inmates and 1 staff who have recovered.  See BOP, COVID-19 Cases, Federal Bureau of Prisons (last updated Sept. 21, 2020), https://www.bop.gov/coronavirus/.  Faucette says:

> no set of conditions would be sufficient to protect his Constitutional Rights, he is challenging the FACT, not condition, of his confinement. The poor sanitary conditions at USP Lewisburg . . . coupled with the FACT that there is a COVID-19 outbreak at this Facility, give grounds to raise the present claim for relief, which can properly be called Freedom From Cruel Treatment And Conditions of Confinement.  The present Motion is a challenge to the continued validity of the Petitioner's confinement, regardless of its conditions.

Def.'s Resp. to Gov't at 11-12 (ECF No. 268).[5]

Judge Woodcock of this District has laid out in detail the criteria for judicial compassionate release under the First Step Act, 18 U.S.C.

---

States v. Faucette, 607 F. App'x 5, 6 (1st Cir. 2015) (per curiam).  On remand, the government moved to dismiss the second count and I resentenced Faucette on only the first Count.  Faucette v. United States, No. 2:13-cr-79-DBH-1, 2018 WL 2452952 (D. Me. May 31, 2018), R. & R. adopted, United States v. Faucette, 2018 WL 3132589 (D. Me. June 26, 2018).  I rejected Faucette's later section 2255 challenge to his sentence.  Id.

[4] The CDC has not mentioned high cholesterol as a risk factor; it says that people with hypertension (high blood pressure) "might be at an increased risk."  CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 22, 2020).

[5] Further:
> The Petitioner, in this Motion, does not take issue with the steps taken at USP Lewisburg to mitigate the risk of inmates contracting COVID-19.  Rather, the Petitioner sustains that no matter what steps are taken, due to his underlying chronic medical condition . . . which according to the CDC, he belongs to the relevant category of persons in high risk of death if he contracts COVID-19, there is no communal holding facility where he could be incarcerated during the COVID-19 pandemic that would be Constitutional.

Def.'s Resp. to Gov't at 13 (ECF No. 268).

§ 3582(c)(1)(A).  See, e.g., Order on Mot. for Compassionate Release, <u>United States v. Nygren</u>, No. 1:16-cr-00106-JAW, 2020 WL 4208926, at *4-5 (D. Me. July 22, 2020) (ECF No. 111).  I will not repeat them all, but focus on those relevant to Faucette: What do the factors of 18 U.S.C. § 3553(a) call for?  Do "extraordinary and compelling reasons warrant" the reduction Faucette seeks?  18 U.S.C. § 3582(c)(1)(A)(i).  Is Faucette "a danger to the safety of any other person or to the community"?  U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018) (citing 18 U.S.C. § 3142(g)).

Faucette is justifiably afraid of COVID-19 given his circumstances.  That is a given.  But as I said at sentencing:

> [T]his is a serious criminal offense involving significant amounts of drugs that had a major detrimental impact in the Lewiston area and involving other people as well in the conspiracy.  That calls for a serious penalty.
> Sadly, it's also the case that Mr. Faucette has engaged in a pattern of activity over the years that demonstrates that he is, in fact, a recurring offender, and so the need to promote respect for the law and just punishment requires a serious penalty.
> Deterrence, there needs to be a serious enough penalty that the rest of the public understands that this will not be tolerated.  I'm not optimistic that any specific deterrence is a real or significant goal here because I think that whatever motivates Mr. Faucette seems to be something that continues, despite the penalties he's confronted.
> On the other hand, protecting the public from his conduct is something that can be achieved, to some degree, by incarceration.

Sentencing Tr. at 14-15 (ECF No. 208).

Those observations still pertain, even in the face of the current pandemic, Faucette's risk factors, and the situation at USP Lewisburg.  I conclude that the circumstances here do not present extraordinary and compelling reasons to reduce Faucette's sentence because his recidivism risk poses a significant

3

danger to the community. Faucette has not served even the mandatory minimum sentence yet. As Judge Torresen said in a different case:

> Even if [the defendant] could establish extraordinary and compelling reasons for his release, reducing his sentence would be inconsistent with the § 3553(a) factors, including protection of the public. I sentenced [the defendant] to a 235-month term of incarceration because of the seriousness of his drug offenses. See 18 U.S.C. § 3553(a)(1). Reducing [his] sentence by 70% would undercut the seriousness of the offense, respect for the law, and the need to deter future criminal conduct. See 18 U.S.C. § 3553(a)(2). Further, [his] presentence report shows a serious criminal record . . . . Given his lengthy criminal record, it would be difficult to find that the safety of the community could be assured if [the defendant] were to be granted early release.

Order to Show Cause, United States v. Hunter, No. 2:14-cr-00122-NT, 2020 WL 4194504, at *3 (D. Me. July 21, 2020) (ECF No. 66).

That reasoning applies here as well, even though the reduction Faucette requests is smaller.

Faucette is eloquent in his request for a second chance.[6] I hope that all he says about his personal development is true and that he continues on that

---

[6] For example:
> The Petitioner has proven to himself that he has changed, all he hopes is for this Honorable Court to recognize his transformation. He is aware that no amount of proof can make this Honorable Court believe in his change. All he can do is believe that by the Grace of God he has changed and act upon that belief for the sake of his loved ones.
> Thousands of inmates, through their own hard work and determination, have been rehabilitated. But few have received the chance to prove their change. They are serving harsh sentences like mine, even though they have been rehabilitated and would not be a threat to the public if released. The Petitioner knows in his heart he is one of them.
> District Judges cannot measure the capacity for people to change, but the truth is that people who commit serious crimes can change and be redeemed. When a District Judge reduces a sentence of those who were severely sentenced and are rehabilitated, the District Judge can lower the chance that person will recidivate upon release. District Judges should also consider that an inmate who is serving a long sentence may be unable to adapt to a changing society upon release. Reducing the sentence of people who have received excessively punitive punishments and who have demonstrated rehabilitation can thus improve public safety.

course. But I must make my decision based upon what the record reveals. What it reveals is great risk of repeated criminal behavior.

I therefore **DENY** Faucette's motion for compassionate release.[7]

**SO ORDERED.**

**DATED THIS 22ND DAY OF SEPTEMBER, 2020**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

. . . .
   The great promise of the American Dream is that with hard work, determination, and some good luck, people can re-invent themselves and find upward mobility. Second Chances "should not be denied to those who through hard work and self-reflection become rehabilitated and, if given a Second Chance, could become contributing and lawabiding citizens."
   "America is the Land of the Second Chance – and when the gates of the prison open, the path ahead should lead to a better life." (President George W. Bush, 2004, State of the Union Address).
Def.'s Resp. to Gov't at 29-31 (ECF No. 268).

[7] Faucette also makes various claims under the Fifth Amendment, the Eighth Amendment, and the Equal Protection Clause. As the sentencing judge, I have authority at this stage only under 18 U.S.C. § 3582(c)(1)(A). Conditions of confinement can be addressed in the District where Faucette is confined. If the BOP has engaged in discrimination in its release to home confinement of Paul Manafort and Michael Cohen but not Faucette, that is a challenge to be made against the Bureau of Prisons, not a party in this case.

5